# EXHIBIT 1



# Implementing Section 71119 of the Working Families Tax Cut Legislation

# Key Requirements and Preliminary Policy Direction from CMS

**November 19, 2025**

**EMBARGOED**
Not for distribution

This communication was printed, published, or produced and disseminated at U.S. taxpayer expense.

# Contents

1. Background and Vision for Community Engagement (C-E)

2. Applicable Populations and Exceptions/Exclusions

3. Demonstrating and Verifying C-E Compliance & Exceptions/Exclusions

4. Implementation Timing

5. Developing a Minimum Viable Product

6. Additional Policy Areas

7. CMS' Compliance and Monitoring Strategy

8. Forthcoming Guidance and Next Steps



Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.



# Background and Vision for Community Engagement

# Background

- Pub. L. No. 119-21, referred to by CMS as the "Working Families Tax Cut" (WFTC) legislation, introduced community engagement (C-E) requirements for certain applicable adults as a condition of their Medicaid eligibility.[1]

- Key Facts:
  - This new requirement applies in any state and the District of Columbia that provides coverage to the adult expansion group under the state plan or similar adult group through certain 1115 demonstrations.
  - U.S. territories, regardless of whether they adopted the adult group, are not required to implement community engagement.
  - States must implement C-E requirements by January 1, 2027, and may elect to implement earlier.
  - C-E requirements may not be waived under section 1115 demonstration authority.

1. Section 71119 of WFTC legislation amended Section 1902 of the Social Security Act (the Act) to add subsection (xx) - Community Engagement Requirement For Applicable Individuals.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Important Considerations

- Information presented in this slide deck **represents CMS' preliminary policy, systems, and operational considerations** as of mid-November 2025 related to implementation of Section 71119 of the WFTC legislation.

- CMS is developing formal guidance that will be released on a rolling basis in 2025-2026. By June 1, 2026, **CMS will also publish an Interim Final Rule** outlining requirements and expectations for all states.

- While states and vendors are strongly encouraged to review this deck to inform planning, please note that <u>**all information described here is preliminary and subject to change**</u>.

- The information summarizing Section 71119 in this document is intended only to be a general informal summary of technical legal standards. It is not intended to take the place of the statutory language that it is based upon. We encourage readers to refer to the applicable statutory language for complete information.

- Please contact CMS for additional guidance and direction: MedicaidWorks@cms.hhs.gov.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# CMS Vision for C-E Implementation

1. **Connect Members to Work and Community.** Community engagement has potential to empower Medicaid beneficiaries through employment, education, or volunteer service so they can escape isolation, build confidence, and achieve prosperity.

2. Start on time by **retaining state flexibility.** Balance the benefits of flexibility with the potential costs of options, including systems and operational costs.

3. **Promote alignment.** Anywhere possible, align new policies with existing statutory and regulatory requirements, including existing requirements for Medicaid, SNAP, TANF, IRS, and the Marketplace. This will help defray operational costs and streamline business flows.

4. **Protect taxpayers.** Ensure program integrity by ensuring that state determinations and policy decisions are easily auditable.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.



# Definition of Applicable Individual

- Applicable individuals must demonstrate compliance with community engagement requirements as a condition of Medicaid eligibility.

- Applicable individuals are generally those:
    - Eligible for or enrolled under the state plan **in the adult group** described in §1902(a)(10)(A)(i)(VIII) of the Act; or
    - Eligible to enroll or is enrolled in a section **1115 demonstration that provides minimum essential coverage (MEC),** and who are at least 19 and under 65 years of age, not pregnant, not entitled to or enrolled for benefits under Medicare Part A or Part B, and not otherwise eligible to enroll under the state Medicaid plan.

- Individuals enrolled in the parent/caretaker relative group under the state plan are *not* included as an applicable population, regardless of the age of their dependent(s).

Community engagement requirements <u>do not</u> apply to individuals enrolled in an 1115 demonstration if the only coverage available to these individuals is not MEC (e.g., family planning-only services). Requirements do apply in states with 1115 demonstrations for partial expansions that provide MEC. CMS continues to evaluate which section 1115 demonstration populations fall into the definition of an applicable individual.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Mandatory Exceptions & Exclusions

Individuals are excepted from demonstrating C-E for a month if for any part of a month the individual was: **under the age of 19**; entitled to or enrolled in **Medicare Part A** or enrolled in **Medicare Part B**; described in a **mandatory categorically needy eligibility group.** An additional exception applies to an individual who was an **inmate of a public institution at any point during the three-month period** ending on the first day of a month in which the individual is otherwise subject to the C-E requirement.

Individuals in any of the specified groups below are excluded from C-E requirements:

1. **Former foster care children** defined in §1902(a)(10)(A)(i)(IX);
2. Most **American Indians and Alaska Natives**;
3. A **parent, guardian, caretaker relative or family caregiver** of a dependent child under the age of 14 or a disabled individual;
4. **Veterans** with a total disability rating as defined under 38 U.S.C. §1155;
5. Individuals who are **medically frail** or otherwise have special medical needs (as defined by the Secretary);
6. Individuals who are **already compliant with TANF work requirements**;
7. Members of households that **receive SNAP benefits who are not exempt from SNAP work requirements** for able-bodied adults without dependents at 7 USCS § 2015(o)(2);
8. Participants in certain **drug addiction or alcoholic treatment and rehabilitation programs**;
9. **Inmates of a public institution**; and
10. **Pregnant women** or individuals entitled to **postpartum medical assistance**.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Key Definitions: Family Caregiver Exclusion

- The RAISE Act defines family caregiver as "an adult family member or other individual who has a _significant relationship_ with, and who provides a broad range of assistance to, an individual with a chronic or other health condition, disability, or functional limitation."

- CMS expects to limit application of the family caregiver exclusion to individuals who provide care to:
  1. an individual living in their household;
  2. a relative (to be further defined); or
  3. another individual for whom the applicable individual provides a minimum number of hours of caregiving per month

  Additional guidance is forthcoming.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Key Definitions: Medical Frailty Exclusion

- CMS intends to require states to use a definition of medical frailty similar to that described in regulations at 42 CFR § 440.315(f). This regulatory definition includes certain individuals described in the community engagement statute (e.g., those with serious and complex medical conditions or who have a disabling mental disorder). (See slide 36 for comparison.)

  - CMS does not intend to provide states with flexibility to add other types of individuals to the definition of medical frailty, beyond those listed in the statute.

- CMS will expect states to implement an auditable approach to verify medical frailty, in alignment with certain guardrails.

  - E.g., medical claims data review or provider documentation, or completion of a screening tool. States may require new applicants without any claims history to complete a screening tool to verify medical frailty, but CMS expects to require states to confirm that determination via claims data/documentation within 6 months post enrollment.

- CMS will expect states to distinguish between conditions justifying a medical frailty exclusion that are permanent (to be reverified at least every 12 months) vs. temporary (to be reverified at least at every renewal).

- Additional details and guardrails forthcoming.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# SNAP and TANF

The WFTC legislation treats exemptions for TANF and SNAP participants differently.

- An individual <u>must be excluded</u> from demonstrating the Medicaid community engagement requirements if the individual:

  1. is *compliant* with any work requirements applied by the individual's state **TANF** program; or
  2. is a member of a household that receives SNAP benefits and is *not exempt* from **SNAP** work requirements under such Act for able-bodied adults without dependents at 7 USC § 2015(o)(2).

- States will need to know if an individual in a household receiving SNAP is subject to or exempt from SNAP work requirements. Medicaid agencies will also need to identify when this status changes.
- If someone fails to meet SNAP work requirements, or has another change that affects SNAP eligibility, this will affect their SNAP eligibility, and the Medicaid agency should be made aware of changes to SNAP eligibility to process the potential Medicaid change in circumstance.
- As part of CMS' plan to collect data from states specific to C-E, CMS may ask states to separately report the number of applicable individuals who are excepted from Medicaid community engagement because they must meet work requirements in SNAP or TANF.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

Case 1:26-cv-12962-DLC   Document 1-1   Filed 06/29/26   Page 14 of 37



# Demonstrating and Verifying C-E Compliance & Exceptions/ Exclusions

# Community Engagement Compliance

To meet C-E requirements in a given month, applicable individuals must do one or more of the following, if they are neither excepted nor excluded:



| | | | | | |
|---|---|---|---|---|---|
| Work at least 80 hours. | Complete at least 80 hours of community service. | Participate in a work program for at least 80 hours. | Be enrolled in an educational program at least half-time. | Have a monthly income that is not less than the applicable **federal** minimum wage[1] multiplied by 80 hours (i.e., currently, $7.25 x 80 = $580 per month). | Is a seasonal worker[2], and have an average monthly income over the preceding 6 months that is not less than the applicable federal minimum wage[1] multiplied by 80 hours. |

**Any combination of these activities for a total of at least 80 hours**

Section 1902(xx)(2) of the Act.
1. Federal minimum wage is defined by section 6 of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(a)(1)(C).
2. A seasonal worker is described in section 45R(d)(5)(B) of the Internal Revenue Code of 1986.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Verification of C-E Compliance

States must establish processes and attempt to use reliable information, including reliable data sources (e.g., payroll, encounter data, data in state eligibility systems/case record) to establish whether an individual met the community engagement requirement, without requiring, where possible, the applicable individual to submit additional information.

Generally, the existing **Medicaid statutory and regulatory framework** for eligibility verification applies to verification of community engagement compliance, including requirements for agencies to:

- Use available electronic data sources before requesting documentation or additional information from individuals *(see 42 CFR 435.948(b))*.
- Minimize requests for information to the minimum needed to verify compliance or exceptions *(42 CFR 435.952(c))*
- Permit individuals to provide any necessary documentation through all modalities (online, mail, phone, etc.) *(42 CFR 435.907(a))*.
- Accept information from the applicant/beneficiary, adult in the applicable individual's household, authorized representative, or individual acting responsibly for the adult *(42 CFR 435.907(a))*.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Verifying Exceptions & Exclusions

- CMS expects states to use available data, including from the individual case record or reliable sources, to verify an applicant's or beneficiary's status as excepted or excluded from community engagement requirements.

- States must <u>not</u> request documentation from individuals to verify a mandatory exception where reliable data is available (e.g., from claims data or the beneficiary record).

- To ensure program integrity, CMS intends to require that states maximize use of data sources and other auditable information to verify exclusions and exceptions and to limit states' use of self-declaration to the greatest extent possible.

**Sample VA Benefit Summary Letter (or VA Award Letter) documenting individual's total disability. Available for download by all veterans on VA.gov.**

**DEPARTMENT OF VETERANS AFFAIRS**

November 04, 2025

John Jay Smith
123 Main Street
New York, NY 12345

Dear John Smith:

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:

**Personal Claim Information**

Your VA claim number is: xxx-xx-1234

You are the Veteran.

**Military Information**

Your most recent, verified periods of service (up to three) include:

| Branch of Service | Character of Service | Entered Active Duty | Released/Discharged |
|---|---|---|---|
| Army | Honorable | March 22, 1988 | May 15, 1991 |
| Army | Honorable | May 06, 2004 | November 30, 2005 |

(There may be additional periods of service not listed above.)

**VA Benefit Information**

| | |
|---|---|
| You have one or more service-connected disabilities: | Yes |
| Your combined service-connected evaluation is: | 100% |
| Your current monthly award amount is: | $4,044.91 |
| The effective date of the last change to your current award was: | November 01, 2025 |
| You are considered to be totally and permanently disabled due solely to your service-connected disabilities: | Yes |
| The effective date of when you became totally and permanently disabled due to your service-connected disabilities: | November 01, 2025 |

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

16

# Potential Sources for Verification of Exceptions & Exclusions

| | Exclusion/Exception | Verification Source & Process |
|---|---|---|
| **Information already collected and stored in states' eligibility systems** | Former Foster Care Status | **Information in application.** Collected at application and available in state eligibility system or from IV-E agency. |
| | American Indian/Alaska Native | **Information in application.** Collected at application and available in state eligibility system. Exclusion aligns with exceptions required for cost-sharing provision of WFTC legislation, so states will need this information for multiple purposes. |
| | Pregnant/Postpartum Status | **Information in application.** Collected at application or post-enrollment. States must accept reports of pregnancy, under penalty of perjury, unless the state has information that is not reasonably compatible with the information provided (see 435.956(e)). |
| **For enrolled benes, must start with available data. If no data exists, then move to other verification approaches as applicable**<br><br>**Additional guidance forthcoming.** | Medical Frailty Status | Available through **claims data** for enrolled Medicaid beneficiaries. If no claims, use other verification approaches. CMS expects to require that states use at least a medical **screener** at application or for individuals newly declaring medical frailty. |
| | Participant in Drug/Alcohol Addiction Treatment/Rehab | Available through **claims data** for enrolled Medicaid beneficiaries. If no claims, provider documentation or a screener could be used to the extent permissible under federal law and regulations. |

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

17

# Potential Sources for Verification of Exceptions & Exclusions

| | Exclusion/Exception | Verification Source & Process |
|---|---|---|
| **Available through state interfaces or other state systems** | TANF Compliance or SNAP Enrollment | **Information exists.** May be obtained through integrated **state eligibility system** or via interface and data sharing agreement between agencies. |
| | Inmate of a Public Institution Within Prior 3 months | **Information exists.** May be accessible using methods developed under CAA 2023, Section 5121 Medicaid provisions and/or 1115 reentry policies, which outline how states can obtain information on timing of an inmate's release. |
| **No data source. Standard documentation exists** | Veteran with Total Disability | **New to Medicaid**. Veterans can provide a VA Benefit Summary Letter (see slide 16). This is a downloadable letter on VA.gov. |
| **No data source or standard documentation** | Family Caregiver Status | **New to Medicaid** for caregivers of individuals not enrolled in Medicaid. Additional guidance forthcoming. |

**Note:** Additional details forthcoming

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

18



Implementation Timing

# Implementation Timing

- States must implement new community engagement requirements by **January 1, 2027.** Outreach to existing beneficiaries would begin no later than September 2026.
- States **may adopt C-E earlier** than the effective date via the state plan or 1115 authority.
  - If a state elects to begin outreach for community engagement prior to August 2026, CMS may allow a "hold harmless period" (up to 4 months) where states may choose whether to disenroll non-compliant individuals as they test systems. States must be in full compliance by January 1, 2027.
- CMS **may not waive** the requirements under section 1115 demonstration authority.

# Outreach

- States must conduct outreach to applicable individuals enrolled in Medicaid before they implement community engagement requirements and periodically thereafter. Outreach requirements cannot be waived by starting early.
- States must conduct outreach to applicable individuals between 4 and 6 months prior to the first day that individuals must comply with the requirements, depending on whether a state elects a 1-, 2-, or 3-month review period (i.e., the number of consecutive months a state requires individuals to demonstrate community engagement at application).
- CMS anticipates requiring that all states conduct periodic outreach to applicable individuals at least once every 6 months after implementation.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# State Review Period for Community Engagement Compliance at Application

**Review period for community engagement compliance at application (Option for 1, 2, or 3 consecutive months)**

**3 consecutive months before App Month**

**(State Option)**

State may require applicant to demonstrate meeting community engagement requirements **in each of the 3** consecutive months prior to the application month

**2 consecutive months before App month**

**(State Option)**

State may require applicant to demonstrate meeting community engagement requirements **in each of the 2** consecutive months prior to the application month

**1 month before App month**

**(Required)**

Applicant must demonstrate meeting community engagement requirements in the **month prior** to the application month

**Application Month (Month 0)**

**1 month after App Month**

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# State Options for Initial Beneficiary Outreach & Compliance Review Periods at Application

Assumes **January 1, 2027,** as the state's community engagement implementation date. Timelines account for the required 3 months of initial outreach to existing beneficiaries and the state's "review period" – how many months an applicable individual must demonstrate C-E to qualify for Medicaid at application (1-3 months, at state option).

**Implementation: Jan 1, 2027**

**Option 1:** Applicants must demonstrate **1 month** of community engagement

| | | Sept 2026 | Oct 2026 | Nov 2026 | Dec 2026 |

Beneficiary outreach begins

Applicant must demonstrate community engagement

**Option 2:** Applicants must demonstrate **2 consecutive months** of community engagement

| | Aug 2026 | Sept 2026 | Oct 2026 | Nov 2026 | Dec 2026 |

Beneficiary outreach begins

Applicant must demonstrate community engagement

**Option 3:** Applicants must demonstrate **3 consecutive months** of community engagement

| Jul 2026 | Aug 2026 | Sept 2026 | Oct 2026 | Nov 2026 | Dec 2026 |

Beneficiary outreach begins

Applicant must demonstrate community engagement

# Early Starters: State Options for Initial Beneficiary Outreach & Compliance Review Periods at Application

Assumes **June 1, 2026,** as the state's community engagement implementation date. Timelines account for the required 3 months of initial outreach to existing beneficiaries and the state's "review period" – how many months an applicable individual must demonstrate C-E to qualify for Medicaid at application (1-3 months, at state option).

**Implementation: June 1, 2026**

**Option 1:** Applicants must demonstrate **1 month** of community engagement

| | | Feb 2026 | Mar 2026 | Apr 2026 | May 2026 |
|---|---|---|---|---|---|

**Beneficiary outreach begins**

**Applicant must demonstrate community engagement**

**Option 2:** Applicants must demonstrate **2 consecutive months** of community engagement

| | Jan 2026 | Feb 2026 | Mar 2026 | Apr 2026 | May 2026 |
|---|---|---|---|---|---|

**Beneficiary outreach begins**

**Applicant must demonstrate community engagement**

**Option 3:** Applicants must demonstrate **3 consecutive months** of community engagement

| Dec 2025 | Jan 2026 | Feb 2026 | Mar 2026 | Apr 2026 | May 2026 |
|---|---|---|---|---|---|

**Beneficiary outreach begins**

**Applicant must demonstrate community engagement**

**4-month "hold harmless" period (at state option)**

No individuals disenrolled for C-E non-compliance until at least **October 1, 2026**



# Implementing Community Engagement: Developing a Minimum Viable Product

# Systems and Operational Requirements for Full C-E Implementation

Full implementation of C-E includes multiple, interdependent elements that extend beyond system updates. States will need to address policy, process, and operational capacity to meet compliance. The following is meant as an example only and is not an exhaustive list.

| System Development | Process and Policy Changes | Operational Updates and Training | Optional Enhancements Improvements |
|---|---|---|---|
| • **Procure new vendor(s)** and/or update existing vendor contracts.<br>• **Update applications and renewal forms** to capture and validate C-E-related information.<br>• Integrate **new data sources** and update E&E systems workflows to identify and verify applicable individuals at application and renewal.<br>• Modify existing functionality to enable data **monitoring and reporting** of compliance, exceptions, and disenrollments.<br>• **Update eligibility rules engines data exchanges, and notices** to reflect C-E compliance determinations.<br>• Update all **consumer and worker portals** to include new C-E related elements. | • Determine the **initial beneficiary outreach & compliance review periods**.<br>• Define **verification procedures**<br>• Establish **auditable procedures** for verifying compliance, exclusions, and short-term exceptions.<br>• **Revise paper applications and renewal forms** to include community engagement-related questions.<br>• Update **call center scripts** and Interactive Voice Response messaging.<br>• **Update eligibility manuals**, make necessary **state regulatory** and other administrative directive changes.<br>• Pursue necessary **state legislative changes.** | • **Train eligibility workers**, call center staff, and contractors on new business processes and systems logic.<br>• Develop **updated communication/ outreach and notice templates** that include C-E requirements and rights.<br>• **Update state monitoring /** compliance processes.<br>• **Update managed care contracts**, inter-agency agreements or other contracts. | • Further **expand data sources** over time to improve verification accuracy (e.g., for workforce programs and volunteer activities).<br>• Establish data-driven, **closed-loop referral pathways** connecting beneficiaries to employment, education, and community-based resources.<br>• **Integrate referrals with case management systems** and external partners to document outcomes and verify participation. |

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Potential C-E Systems Workflow – Initial Application



**Individual Completes and Submits Application**

Individuals must be able to submit applications through the following modalities:
(1) Online,
(2) Telephone,
(3) Mail, and
(4) In-person.

**Update applications, customer and worker portals to include questions that screen for compliance with and exclusions from C-E.**



**State Receives & Processes Application**

States' systems intake applications through manual and/or automated processes.

States identify if the individual is in the applicable population.

**Update eligibility logic, state systems, and worker training to identify applicable population subject to C-E and route them through appropriate determination process.**



**State Verifies C-E Compliance or Exemption**

Use reliable information, including information obtained through reliable data sources, to verify compliance with or exemption from C-E.

Request additional documentation, as applicable.

**Add data sources and update processes and eligibility logic to verify individuals' compliance with or exemption from C-E.**



**State Makes Determination**

Determine eligibility. If no satisfactory showing (i.e., compliance or exception) is made after appropriate notices, the state must redetermine eligibility on other bases.

States must provide individuals a minimum of 30 calendar days from the notice of non-compliance to demonstrate compliance or an exception.

**Update rules engine and eligibility determination logic.**



**State Provides Notice**

If the individual is determined eligible, the state sends notice and enrolls them.

If ineligible on all bases, the state must deny eligibility with appropriate notices and fair hearing rights, and transfer the account to the appropriate program, including the Marketplace, if potentially eligible.**

**Update rules engine and eligibility determination logic. Update account transfer logic to send accts to the Marketplace.**

*States must conduct outreach to applicable individuals between 4 and 6 months prior to the first day that individuals must comply with the requirements.
** Individuals determined ineligible for Medicaid for non-compliance with C-E requirements are not eligible for financial assistance to obtain Marketplace coverage.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Potential C-E Systems Workflow – Renewal



**State Identifies the Renewal Cohort**

Identify the cohort of individuals enrolled in Medicaid for whom a renewal must be initiated and whether those individuals are in the applicable population. Renewals will occur every 6 months for most applicable individuals.

**Update eligibility logic, state systems, and worker training to identify applicable population subject to C-E and route them through appropriate redetermination process.**



**State Verifies C-E Compliance or Exemption**

Use reliable information, including information obtained through data sources, to verify income and other eligibility criteria compliance with or exception from C-E.

Request additional documentation, if applicable.

**Add data sources and update processes and eligibility logic to verify individuals' compliance with or exemption from C-E.**



**State Makes Determination**

State rules engine determines whether the individual is eligible.

If no satisfactory showing (i.e., compliance or exception) is made after appropriate notices with appeal rights, the state must redetermine eligibility on other bases.

Note: States must provide individuals a minimum of 30 calendar days from the notice of non-compliance to demonstrate compliance or an exception.

**Update rules engine and eligibility determination logic.**



**State Provides Notice**

If individual is determined eligible, the state sends notice and renews eligibility. Notice includes reminder of C-E and other obligations.*

If an individual is determined ineligible on all bases, and after a minimum 30-day period to demonstrate compliance, the state must provide appropriate notices and appeal rights, deny eligibility, and transfer the account to the appropriate program, including the Marketplace, if applicable**.

**Update rules engine and eligibility determination logic. Update notice and outreach materials.**

*  States must conduct periodic outreach to applicable individuals.
** Individuals determined ineligible for Medicaid for non-compliance with C-E requirements are not eligible for financial assistance to obtain Marketplace coverage.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Minimum Viable Product for Initial State Implementation

- CMS is outlining requirements of a **minimum viable product (MVP)** for all states to achieve.

- States will be expected to implement basic systems and operational requirements of the statute in first year (**the MVP**) as they work to expand use of data sources and enhance systems to support increased reliance on data sources in years 2 and 3.

- CMS is exploring data sources for states to verify educational status and will also use the additional time in years 2 and 3 to identify and include more data sources in the federal data Hub and elsewhere.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Vision of Systems Development From Year 1 to Year 2+

## Minimum Viable Product  (Year 1 2027)

- Implement all core systems functionality (updates to eligibility determination logic, eligibility worker and customer portal, etc.).
- For Verification of Qualifying Activities:
  - <u>Work Hours & Education</u>: Primary use of electronic **data sources or auditable documents.**
  - <u>Community Service & Job Program Enrollment</u>**:** Auditable individual declaration allowed in year 1, under penalty of perjury; states are encouraged to use data or documents if available.
  - <u>Mandatory Exceptions & Exclusions</u>**:** Validation using data from data sources; MMIS/eligibility system, auditable individual declaration under penalty of perjury, etc. (see slides 17-18 for more detail).

## Enhanced Functionality for Verification (Year 2+ 2028)

- Maximum reliance on data.
- Primary use of data sources for all qualifying activities, including work, education, job programs, and community service.
- Fixes and improvements over year 1 functionality.

**January 2027> MVP; January 2028> and beyond Further Improvements**

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.



# Additional Policy Areas

# Additional Policy Areas

CMS intends to provide states flexibility in certain areas, which include but are not limited to, the following:

- <u>Verification Frequency</u>: States have flexibility in determining frequency of compliance with qualifying activities and exceptions that are subject to change, within the statutory framework.
    - *Note*: Consistent with 42 CFR 435.916(d)(1) (in effect as of 2023), states must promptly act on all information received from a beneficiary that may affect eligibility.

- <u>Approaches to Outreach</u>: CMS will not prescribe additional required forms of individual outreach beyond those specified in statute but will provide examples states may consider – e.g., text, emails, calls, in person. Managed care plans are considered a potential modality for individual outreach.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

31



# CMS' Proposed Approach to Assessing Readiness

CMS will establish a consistent, transparent systems and operational readiness assessment framework to evaluate state progress toward MVP implementation and guide technical assistance (TA) and compliance decisions.

**Systems Readiness Assessment Framework:**
- Will be based upon monthly State Officer state meetings, the review of systems projects status reports, and demonstrations.
- TA to states, as needed, will be provided through engagement with partner organizations (i.e., S-TAG monthly workgroup, state cohort meetings, NAMD CIO Affinity Group meetings).

**Operational Readiness Assessment Framework:**
- Will consider factors such as budget requests, procurement, staffing, training, development of outreach materials and inter-agency agreements, and coordination with managed care plans.
- CMS will meet with states on a regular cadence to assess progress, including via quarterly deep-dive sessions with states to address emerging issues.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Monitoring and Compliance

- CMS will expect regular data reporting from states on community engagement.
  - CMS is reviewing existing CMS data sources to assess where those data may need to be updated or enhanced.
  - Expect forthcoming guidance about potential updates to Performance Indicator and Eligibility Processing data sets and T-MSIS data quality priorities.

- States that fail to meet expected timelines or compliance deadlines may be placed on a corrective action plan and may be subject to compliance action under Section 1904 of the Act (withholding of federal matching funds).

- CMS also plans to outline any new processes and procedures for ensuring compliance in the IFR for states that do not comply with the community engagement requirements.

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Forthcoming Guidance and Next Steps

- WFTC Legislation Overview Center Informational Bulletin (CIB) and Accompanying Slide Deck (available on www.Medicaid.gov/medicaidreforms)

- Interim Final Rule – no later than June 2026

- Resuming Friday NAMD/CMCS Eligibility Workgroup Calls

- MedicaidWorks@cms.hhs.gov



Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.

# Appendix: Medical Frailty – Comparison of Statutory & Regulatory Definitions

**Medically frail definition for an Alternative Benefit Plan:**

42 CFR 440.315(f): The State's definition of individuals who are medically frail or otherwise have special medical needs must at least include all of the following:

- Individuals described in § 438.50(d)(3) of this chapter,
- **Individuals with disabling mental disorders** (including children with serious emotional disturbances and adults with serious mental illness),
- **Individuals with** chronic **substance use disorders,**
- **individuals with serious and complex medical conditions,**
- **Individuals with a physical, intellectual or developmental disability that significantly impairs their ability to perform 1 or more activities of daily living, [and]**
- Individuals with a disability determination based on Social Security criteria or in States that apply more restrictive criteria than the Supplemental Security Income program, the State plan criteria.

C-E medically frail definition in statute includes **bolded** bullets above and "an individual—(aa)who is blind or disabled (as defined in section 1614);"

Pre-decisional and iterative. The preliminary information presented in this deck is for exclusive use by states and vendors to inform planned implementation of Medicaid community engagement requirements. All policies and requirements are subject to change.