

EXHIBIT 17

## DECLARATION OF JAMES V. McDONALD, M.D., M.P.H.

I, **JAMES V. McDONALD, M.D., M.P.H.**, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

**Professional and Agency Background**

1. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with New York State Department of Health ("DOH" or "Department") staff, or from my review of relevant documents and information. I submit this Declaration in support of the State's Motion for a Preliminary Injunction.

2. I am the Commissioner of New York State Department Health, and I have been in this role since 2023. In this role, I am responsible for the policy direction, day-to-day strategy, operations, and management for DOH. Prior to this role, I held multiple positions at the Rhode Island Department of Health between 2012 and 2023, including Interim Director of Health, Chief Administrative Officer of the Board of Medical Licensure and Discipline, Medical Director for the COVID Unit, as well as Medical Director for the Division of Health Care Quality and Safety and the Drug Overdose Prevention Program. I earned my Doctor of Medicine (M.D.) from Loyola Stritch School of Medicine in Chicago, Illinois and completed my pediatric residency with the United States Navy and my residency in General Preventive Medicine and Public Health with State University of New York. I earned my Master of Public Health from the University of North Carolina at Chapel Hill.

3. DOH is the single state agency responsible for administering the New York State Medicaid Program, which provides low-income individuals with comprehensive healthcare coverage and access to affordable, integrated, high-quality healthcare at no or low cost.

1

4.    The New York State Medicaid Program insures approximately 6.4 million people, providing health coverage to children, families, and older adults—including some of the most vulnerable residents in the state, such as those experiencing homelessness, living with a disability, or who have a serious or complex medical condition.

5.    On January 1, 2014, New York State implemented Medicaid expansion under the Affordable Care Act (the "ACA"). This expansion extended federally funded comprehensive health insurance to low-income adults aged 19 to 64 with household incomes up to 133% of the Federal Poverty Level.

6.    As of May 2026, approximately 1.9 million, or nearly 30 percent, of New York State Medicaid members fit these criteria. For the prior state fiscal year 2026, approximately $17.5 billion or nearly 32 percent of DOH's federal Medicaid funding comes from the FFP for these Medicaid expansion adults.

**The Interim Final Rule**

7.    On June 1, 2026, CMS promulgated the Interim Final Rule ("IFR") relating to the novel work or community engagement requirement imposed under Section 7119 of H.R.1 for adults covered under the Medicaid expansion provision of the ACA (the "community engagement requirements").

8.    Among other things, the IFR added a new requirement that a "medically frail" individual must also be "an individual whose physical, mental, or other behavioral health condition significantly impairs the individual's ability to comply with the community engagement requirements 42 CFR § 435.554(c)(5)(i).

## Human Costs of the IFR's Community Engagement Requirements

9. DOH studies conducted of H.R. 1 before the IFR was released suggest that (1) at least 25 percent (approximately 475,000) of DOH's Medicaid expansion adults will be disenrolled at some point due to the combination of community engagement requirements and six-month redeterminations (a provision of H.R. 1 that requires members' eligibility to be reevaluated every six months), and (2) New York State uninsured rates will increase up to 45% (i.e., the number of uninsured individuals will increase from approximately 1,000,000 before H.R. 1 to as high as 1,450,000 after H.R. 1). Because the IFR goes beyond H.R. 1, stripping away the protections provided in H.R. 1 to the medically frail, these studies likely underestimate the impact to members.

*IFR's Significant Impairment Requirement*

10. The IFR added a new requirement that, in addition to falling into one of the five categories enumerated in H.R. 1, a "medically frail" individual must *also* be "an individual whose physical, mental, or other behavioral health condition significantly impairs the individual's ability to comply with the community engagement requirements." 42 CFR § 435.554(c)(5)(i).

11. DOH expects the "significant impairment" requirement could result in more members losing coverage than would otherwise have lost coverage under the statutory definition of medically frail. This is either because their condition may not meet the IFR's additional, non-statutory "significant impairment" threshold, or because they cannot obtain the proof required to demonstrate their ability to work is significantly impaired. The "significant impairment" requirement will also likely decrease the number of people the New York State Medicaid Program can automatically verify as medically frail, because, under the IFR, the *ex parte* verification process may require not just a diagnosis code, but also other information on utilization of services and level of impairment, *see* 91 Fed. Reg. 33,406 (June 3, 2026), which may not be available for

many renewing members. This will further increase coverage loss because individuals will need to provide documentation or additional information to successfully renew.

12. Members with conditions that meet the statutory categories of medical frailty, but who lose coverage due to inability to document "significant impairment" may return to the New York State Medicaid Program sicker and costlier for the loss of health coverage to treat and manage their conditions. This type of "churn" in Medicaid enrollment both raises costs for the New York State Medicaid Program and decreases quality of care for members.

**<u>Administrative, Operational, and Financial Burdens on New York State</u>**

13. DOH faces several urgent deadlines with respect to implementing community engagement requirements. DOH must apply community engagement requirements to applications and renewals initiated on January 1, 2027. To do this, DOH must substantially finalize eligibility system requirements by July 2, 2026, to enable full system deployment, with appropriate testing, in Fall 2026. After July 2, 2026, DOH will only have limited ability to make further system changes for use by January 1, 2027. Moreover, DOH is required by H.R. 1 to issue notices before September 2026 informing individuals of the community engagement requirements in at least two different modalities. . In order to issue those notices in a timely fashion, DOH needs to begin to send these notices in July 2026, to ensure the full population receives timely notice.

14. With respect to the medical frailty exclusion, the "significant impairment" requirement– plus the uncertainty of how to implement it – may require DOH to rapidly change its operational approach and systems development. In addition to analyzing, developing and implementing new ways to evaluate medical frailty, DOH may need to integrate new data sources to evaluate members' eligibility for the medical frailty exclusion, which will add development costs as well as potential costs from accessing new data. As more individuals are impacted and

denied coverage or disenrolled because of this requirement, DOH expects more calls, more documents to process, and more appeals of adverse actions. And finally, in addition to the costs of operationalizing this new requirement, DOH will also incur the cost of educating its members, staff, and other stakeholders including advocacy agencies, community-based organizations and the provider community, about what the requirement means and how it can be met.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed this 26th day of June 2026.

James V. McDonald, M.D., M.P.H.
Commissioner
New York State Department of Health