# EXHIBIT 22

<u>**DECLARATION OF MAJORIE STINCHCOMBE**</u>

I, Majorie Stinchcombe, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a resident of Vermont. I am over the age of 18 and have personal knowledge, or knowledge based on review in my capacity as the Helpline Director at the Office of the Health Care Advocate, of information and records gathered by Vermont Office of the Health Care Advocate and agency staff, of the matters set forth below. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am the Helpline Director at the Vermont Office of the Health Care Advocate. The Office of the Health Care Advocate (HCA) advocates for all Vermonters through both individual consumer assistance and systemic advocacy on health care issues. We work to increase access to high quality, affordable health care for all Vermonters.

3.      The Vermont Agency of Human Services, Department of Vermont Health Access administers Vermont Medicaid. Vermont Medicaid provides low-income individuals with comprehensive healthcare coverage and access to affordable, integrated, high-quality healthcare at no or low cost. Vermont Medicaid's coverage includes medical, dental, mental health and substance use treatment, and long-term services and supports. Vermont Medicaid's mission is to improve Vermonters' health and well-being by providing access to high-quality, cost-effective health care.

4.      Vermont Medicaid insures approximately 174,000 people, providing health coverage to children, families, and older adults—including some of the most vulnerable residents in the state, such as those experiencing homelessness, living with a disability, or who have a serious or complex medical condition.

1

5. Vermont administers its Medicaid program pursuant to federal law and regulations as well as the terms of its federally approved State Plans and its Section 1115 Demonstration Project. Vermont Medicaid receives federal Medicaid and CHIP funding, known as "Federal Financial Participation" (FFP), which covers an average of 63% of Vermont Medicaid's expenditures on eligible enrollees.

6. On January 1, 2014, Vermont implemented Medicaid expansion under the Affordable Care Act (the "ACA"). This expansion extended federally funded comprehensive health insurance to low-income adults aged 19 to 64 with household incomes up to 133% of the Federal Poverty Level.

7. As of March 2026, approximately 49,000 (28%) of Vermont Medicaid members are enrolled under Medicaid expansion. For the current state fiscal year 2026, ending on June 30, 2026, approximately $331 million, or 24%, of Vermont Medicaid's federal Medicaid funding comes from the FFP for the Medicaid expansion population.

8. I and my staff at the Office of Health Advocate have been closely following enactment and implementation of H.R. 1, in particular Section 71119, which imposes novel work or community engagement requirements for adults covered under the Medicaid expansion provisions of the ACA (the "community engagement requirements").

9. Prior to the enactment of H.R. 1, the Medicaid Act has never required financially eligible individuals to work, volunteer, or meet other community engagement requirements to establish Medicaid eligibility. Consequently, Vermont Medicaid does not have in place systems by which to verify work, volunteer, or other community engagement activities.

10. Since November 2025, CMS has been providing guidance on expected community engagement requirements policy. On information and belief, Vermont relied on CMS guidance to

determine how to comply with new laws, implement operational, system, and process changes, and, ultimately, avoid financial penalties that those laws imposed for noncompliance.

11. On June 1, 2026, CMS promulgated the Interim Final Rule ("IFR") relating to the community engagement requirement. The IFR includes several surprising provisions that are vague, differ substantially from CMS's prior guidance, and are more restrictive than statutory language. These provisions also will be challenging for Vermont Medicaid to design and implement before January 1, 2027 as required by H.R. 1 § 71119(d), and are expected to cause significant harm to members and Vermont Medicaid once implemented.

12. The IFR added a new "significant impairment" requirement with respect to the medically frail exclusion (42 CFR § 435.554(c)(5)(i)), which does not exist in the text of H.R.1 Section 71119. This requirement was not mentioned in any CMS written or verbal guidance prior to publication of the IFR. The IFR provides very little concrete guidance about how to verify whether an individual meets this new "significant impairment" requirement, and the limited guidance provided is in direct conflict with prior guidance provided by CMS. On information and belief, this change will result in burdens to Vermont Medicaid, members, and providers.

13. Beginning in September 2025 and continuing until the release of the IFR, Vermont Medicaid based its policy and system determination on the statutory language and the subregulatory guidance provided by CMS, as detailed above. Based on this guidance, on information and belief, Vermont Medicaid has already done significant work, including but not limited rulemaking, updating draft notices to members, and projected fiscal and staffing needs to implement HR.1.

14. On information and belief, Vermont Medicaid faces several urgent deadlines with respect to implementing community engagement requirements. Vermont Medicaid must apply

community engagement requirements to applications and renewals as of January 1, 2027. Moreover, Vermont Medicaid is required by H.R. 1 to issue notices by September 1, 2026, addressing the changes occasioned by the IFR. In order to issue those notices in a timely fashion, Vermont Medicaid needs to send information by mid- to late-August 2026. Vermont Medicaid is also developing an appendix to initial and renewal application forms

15. Vermont Medicaid's eligibility system was not built to support community engagement requirements. On information and belief, Vermont Medicaid has been diligently working toward reconfiguration of its system to incorporate the new eligibility factors necessary to evaluate community engagement. This is a complex change, and its system design was based upon statutory requirements in H.R.1 Section 71119 and the guidance CMS issued prior to June 1, 2026.

16. The "significant impairment" requirement the IFR added to medically frail determinations—plus the uncertainty of how to implement it—will require Vermont Medicaid to rapidly change its operational approach and systems development. Vermont Medicaid will need to analyze, develop and implement new ways to evaluate medical frailty, add more data elements to the enrollment process, and create more complicated code lists, which will add development costs as well as potential costs from accessing new data. As more individuals are impacted and denied coverage or disenrolled as a result of this requirement, Vermont Medicaid expects more calls, more documents to process, and more appeals of adverse actions. Vermont Medicaid will also incur the cost of educating its members, staff, and other stakeholders about what the requirement means and how it can be met.

17.     On information and belief, Vermont Medicaid also expects the new, complex, and variable limitations on self-attestation to increase its operational complexity. These limitations will complicate training staff, assisters, and community organizations on eligibility processes.

18.     The new administrative processes required by the IFR and not contemplated in H.R.1 Section 71119 or in previous CMS guidance will not fall just on Vermont Medicaid, but on Vermont more generally.


I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed this 29th day of June, 2026.

Marjorie Stinchcombe

Helpline Director, Office of the Health Care Advocate