UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 26-12962-RGS

COMMONWEALTH OF MASSACHUSETTS, *et al.*

v.

MEHMET OZ, M.D., in his official capacity as
Director of the Centers for Medicare & Medicaid Services, *et al.*

MEMORANDUM AND ORDER ON PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUCTION

July 29, 2026

STEARNS, D.J.

Plaintiffs Commonwealth of Massachusetts; State of California; State of New Jersey; State of Arizona; State of Colorado; State of Connecticut; State of Delaware; District of Columbia; State of Hawai'i; State of Illinois; Office of the Governor, *ex rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; State of Maine; State of Maryland; State of Michigan; State of Minnesota; State of Nevada; State of New Mexico; State of New York; State of North Carolina; State of Oregon; Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; State of Rhode Island; State of Vermont; Commonwealth of Virginia; State of Washington; and State of Wisconsin (collectively, the States) filed this action against Mehmet Oz, in his official capacity as Director

of the Centers for Medicare & Medicaid Services; the Centers for Medicare & Medicaid Services (CMS); Robert F. Kennedy, Jr., in his official capacity as Secretary of the U.S. Department of Health & Human Services; and the U.S. Department of Health and Human Services (collectively, the Government) based on certain limitations imposed by CMS in its Interim Final Rule (IFR) implementing H.R. 1, colloquially known as the "Big Beautiful Bill."[1]  In a three-count Complaint, the States accuse the Government of violating the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(A)-(C), and the Spending Clause of the U.S. Constitution.  Before the court is the States' motion for a preliminary injunction.  On July 28, 2026, the court convened a hearing on the motion.  For the following reasons, the court will deny the States' motion without prejudice.

## DISCUSSION

"When assessing a request for a preliminary injunction, a district court must consider '(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest.'"

---

[1] Specifically, the States challenge: (1) the inclusion of a work requirement in the definition of "medically frail"; (2) the use of a 12-month look-back period when assessing claims of medical frailty; and (3) the imposition of a work requirement on the short-term hardship (Emergency Declaration) exception.

*Norris on behalf of A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 22 (1st Cir. 2020), quoting *Shurtleff v. City of Boston*, 928 F.3d 166, 171 (1st Cir. 2019).  Here, the court begins (and ends) its analysis with the second factor, irreparable harm.[2]

The primary[3] harm upon which the States rely is the "outlays of agency staff time and funding necessary to comply with CMS' regulatory about-face." Mem. [Dkt # 3] at 16.  The States assert that this harm is irreparable because, the Government being immune from any suit for monetary damages, they lack any means to recover these expenditures once incurred.

Courts within this district have recognized that unrecoverable "money damages resulting from agency action" are "sufficient to establish irreparable harm in an APA suit."  *RENEW Ne. v. United States Dep't of Interior*, 2026 WL 1078282, at *30 (D. Mass. Apr. 21, 2026).  The court is not convinced,

---

[2] Although "[l]ikelihood of success is the main bearing wall of the four-factor framework," *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996), the failure "to demonstrate that irreparable injury is *likely* in the absence of an injunction" is also a sufficient basis to deny a request for a preliminary injunction, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).

[3] Plaintiffs also vaguely suggest that, once the changes are communicated to the public, they may need to "devote more staff time, and likely hire more employees, to address the deluge of calls, complaints, and appeals stemming from these regulatory changes," *id.* at 18, but this is speculation.

however, that the States have shown that their expenditures *are* likely to be totally irrecoverable. The Government expressly represents that it will reimburse "90% of the states' costs of designing, developing and installing state eligibility systems to implement the rule." Opp'n [Dkt # 81] at 30.

To the extent that the States attempt to premise irreparability on the 10% of costs not already subject to reimbursement, the court is not persuaded. The States' main complaint associated with these costs is the "tight timeline[]," Mem. at 17, under which they must implement the programmatic changes. But it is not clear how much this harm can fairly be attributed to CMS. This timeline was set by Congress in H.R. 1, not by CMS in the challenged IFR. Additionally, while it is true that "[t]he irreparable harm analysis focuses on irreparability, 'irrespective of the magnitude of the injury,'" *Washington v. Trump*, 145 F.4th 1013, 1036 (9th Cir. 2025), quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999), magnitude is not wholly irrelevant. Because injunctive relief is the exception, not the rule, there is a certain point at which damages fail to justify the issuance of such an extraordinary measure. Plaintiffs have not shown that their damages rise above that minimal threshold here. Moreover, the additional costs that may be incurred by the States are unlikely to bloom disproportionately given the familiarity of the responsible state agencies with the tasks to be performed.

In denying the motion, the court clarifies that its decision is not a reflection or anticipation of its ultimate views on the merits of the underlying litigation.  As illustrated in the pleadings and briefings to date (and in the arguments of counsel during the hearing), this case presents difficult issues regarding the scope of Congress's delegation of interpretative authority to the Secretary and the faithfulness to Congressional intent with which the Secretary performed his task.  This, in turn, requires an examination of the data relied upon by the Secretary and the judgments (some medical) that underlay his amplification of Congress's legislative outline.  These are determinations that, in the view of the court, should be made on a developed record of the kind that informs a court's decision at the summary judgment stage of a case.

The court also notes that its denial of the States' motion is without prejudice.  The court will, after consulting the parties, set an expedited schedule that provides for full briefing of the merits before the implementation deadline of January 1, 2027.  If, through no fault of the States, good cause should subsequently arise necessitating the extension of the briefing deadlines past December 31, 2026, and if that extension is not accompanied by a discretionary deferral of the January 1, 2027, implementation deadline by the Government, the States remain free to

renew their request for injunctive relief (or to file a new request for emergency relief).

## ORDER

For the forgoing reasons, the motion for a preliminary injunction is DENIED without prejudice.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE