UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 26-12962-RGS

COMMONWEALTH OF MASSACHUSETTS, *et al.*

v.

MEHMET OZ, M.D., in his official capacity as
Director of the Centers for Medicare & Medicaid Services, *et al.*

# MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

October 29, 2026

STEARNS, D.J.

Plaintiffs Commonwealth of Massachusetts; State of California; State of New Jersey; State of Arizona; State of Colorado; State of Connecticut; State of Delaware; District of Columbia; State of Hawaiʻi; State of Illinois; Office of the Governor, *ex rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; State of Maine; State of Maryland; State of Michigan; State of Minnesota; State of Nevada; State of New Mexico; State of New York; State of North Carolina; State of Oregon; Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; State of Rhode Island; State of Vermont; Commonwealth of Virginia; State of Washington; and State of Wisconsin (collectively, the States) filed this action against Mehmet Oz, in his official capacity as Director

of the Centers for Medicare & Medicaid Services; the Centers for Medicare & Medicaid Services (CMS); Robert F. Kennedy, Jr., in his official capacity as Secretary of the U.S. Department of Health & Human Services; and the U.S. Department of Health & Human Services (collectively, the Government) to challenge certain limitations imposed by CMS in its Interim Final Rule (IFR) implementing H.R. 1:[1] (1) the incorporation of a work, study, or community service requirement in the definition of "medically frail"; (2) limiting the lookback period for claims and encounter data used to assess medical frailty to twelve months; and (3) restrictions on the use of self-attestations to establish medical frailty. In a three-count Complaint, the States accuse the Government of violating the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(A)-(C), and the Spending Clause of the U.S. Constitution. Before the court are the parties' cross-motions for summary judgment. On October 22, 2026, the court convened a hearing on the motions. For the following reasons, the court will allow in part and deny in part the States' motion and allow in part and deny in part the Government's motion.

## BACKGROUND

Enacted in 1965, Medicaid is a cooperative federal-state program in which the federal government supplies funding to states to assist in

[1] H.R. 1 was designated by its sponsor as the "One Big Beautiful Bill."

providing medical services to low-income individuals and individuals with disabilities. *See* 42 U.S.C. §§ 1396 *et seq*. A state that elects to participate in the program must submit a plan for approval to the Secretary of the U.S. Department of Health & Human Services, who generally exercises his authority under the Medicaid statute through CMS. If a plan is approved, the state receives Medicaid funds from the federal government for a percentage of the money spent by the state in providing covered medical care to Medicaid-eligible individuals.

On July 4, 2025, President Trump signed into law H.R. 1, which makes Medicaid eligibility for "applicable individuals" – a category which broadly includes individuals newly rendered eligible for Medicaid coverage under the Affordable Care Act (*i.e.*, the "expansion population"), *see id.* § 1396a(xx)(9)(A) – contingent on compliance with a community engagement requirement[2] beginning January 1, 2027. *Id.* § 1396a(xx)(1). Certain individuals ("specified excluded individuals") are excepted from the definition of "applicable individuals," including, as relevant here:

> An individual . . . who is medically frail or otherwise has special medical needs (as defined by the Secretary), including an individual—

[2] To satisfy the community engagement requirement, an applicable individual must perform 80 hours of work or community service each month or be enrolled at least half-time in an educational program. *See id.* § 1396a(xx)(2).

> (aa) who is blind or disabled (as defined in section 1382c of this title);
>
> (bb) with a substance use disorder;
>
> (cc) with a disabling mental disorder;
>
> (dd) with a physical, intellectual or developmental disability that significantly impairs their ability to perform 1 or more activities of daily living; or
>
> (ee) with a serious or complex medical condition . . . .

*Id.* § 1396a(xx)(9)(A)(ii)(V).

Given the short timeline which states were given to implement the community engagement requirement and the substantial programmatic changes implementation would necessitate, CMS early in the process provided the States with informal guidance on how to assess community engagement. At no point did the informal guidance offered by CMS reference any work requirement in relation to the specific category "medically frail or otherwise has special medical needs." Nonetheless, when – consistent with Section 71119(d) of H.R. 1[3] — CMS issued the IFR in June of 2026, it unexpectedly defined "[a]n individual who is medically frail or otherwise has

[3] "Not later than June 1, 2026, the Secretary of Health and Human Services shall promulgate an interim final rule for purposes of implementing the provisions of, and the amendments made by, this section." Pub. L. No. 119-21, 139 Stat. 72, 314.

special medical needs" as "an individual whose physical, mental, or other behavioral health condition significantly impairs the individual's ability to comply with the community engagement requirement" and who further falls within one of the five subcategories enumerated by Congress. 42 C.F.R. § 435.554(c)(5)(i).

The IFR incorporates two other major changes that figure in this litigation. First, it limits the States' ability to rely on medical records to verify medical frailty. Only claims and encounter data from the twelve months preceding the date an application is filed are considered reliable for the purposes of verifying medical frailty. *See id.* §§ 435.557(a)(vii)-(viii). Second, it limits an individual's ability to self-attest to medical frailty. The States may only accept one self-attestation per period of enrollment, *see id.* § 435.557(f)(1)(ii), which is defined as "a continuous period of enrollment in coverage under the State plan or waiver without the individual being disenrolled, regardless of the number of consecutive eligibility periods, of redeterminations or renewals, or of transitions between eligibility groups," *id.* § 435.557(a).

## DISCUSSION

In the context of administrative law litigation, "a motion for summary judgment is simply a vehicle to tee up a case for judicial review." *Boston*

*Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016). "[A]n inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious." *Id.* Because this standard "affords great deference to agency decisionmaking and agency actions are presumed valid, 'judicial review [under the APA], even at the summary judgment stage, is narrow.'" *California v. Dep't of Educ.*, 2026 WL 2754968, at *11 (D. Mass. Sept. 17, 2026) (alteration in original), quoting *Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997).

## I. APA Claims (Counts I and II)

The States assert two claims under the APA: (1) that the definition of "medically frail" in the IFR is contrary to law (Count I); and (2) that its definition, as well as the twelve-month lookback period and the self-attestation limit, are each arbitrary and capricious (Count II).

### *a. Contrary to Law*

The parties agree that, under H.R. 1, the term "medically frail" must "includ[e]" individuals who are blind or disabled; have a substance use disorder; have a disabling mental disorder; have a physical, intellectual or developmental disability that significantly impairs their ability to perform one or more activities of daily living; or have a serious or complex medical

condition. 42 U.S.C. § 1396a(xx)(9)(A)(ii)(V). Their dispute centers on whether CMS was permitted to add a further limitation to the term in the IFR, defining an individual who is "medically frail" as one who falls within these five subcategories **and** "whose physical, mental, or other behavioral health condition significantly impairs the individual's ability to comply with the community engagement requirement."

"As usual, when tasked with interpreting a statute, we 'must start with the text of the statute itself,' aiming as best we can 'to effectuate congressional intent.'" *Washington v. Dep't of Hous. & Urb. Dev.*, 171 F.4th 473, 490 (1st Cir. 2026), quoting *Teles de Menezes v. Rubio*, 156 F.4th 1, 12 (1st Cir. 2025). "Unless the statute specifies otherwise, 'we generally assume that the [text] carries its plain and ordinary meaning.'" *Washington*, 171 F.4th at 490 (alteration in original), quoting *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020).

Although H.R. 1 generally gives CMS discretion to define "medically frail or otherwise has special needs," the statute is clear that the term must, "includ[e]" individuals within five listed subcategories.[4] "[T]he verb *to*

[4] The agency's discretion to define "medically frail" is subject to the statutory limitations imposed by Congress. *See Safer Chemicals, Healthy Fams. v. Env't Prot. Agency,* 943 F.3d 397, 425 (9th Cir. 2019) ("We agree that the statute grants EPA discretion to determine the conditions of use for each chemical substance, but that discretion may only be exercised within

*include* introduces examples." *Hincapie-Zapata v. United States Att'y Gen.*, 977 F.3d 1197, 1201 (11th Cir. 2020) (emphasis in original), quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 15, at 132 (2012); *see also Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."). It follows that individuals falling within one of the five listed subcategories – blind or disabled; having a substance use disorder; having a disabling mental disorder; having a physical, intellectual or developmental disability that significantly impairs their ability to perform one or more activities of daily living; or having a serious or complex medical condition – serve as examples of what Congress meant as "medically frail."

The Government argues that, even if the listed subcategories exemplify medical frailty, it does not follow that "medically frail" "must include every possible object within" these subcategories. Gov't Cross-Mot. [Dkt # 138-1] at 11. At least one Circuit, however, has concluded otherwise in

---

the bounds of the statutory definition itself. Where Congress has explicitly provided a definition for a term, and that definition is clear, an agency must follow it.") (internal citation omitted); *see also City of Providence*, 954 F.3d at 31 ("When an executive agency administers a federal statute, the agency's power to act is 'authoritatively prescribed by Congress.'"), quoting *City of Arlington v. Fed. Commc'n Comm'n*, 569 U.S. 290, 297 (2013).

circumstances similar to those here, holding that where "include" is used without qualification, *any* object within a listed category falls within the scope of the term.[5] *See Hincapie-Zapata*, 977 F.3d at 1202 (11th Cir. 2020) ("Because the text contains no language qualifying the amount of 'money' necessary to constitute 'funds,' the ordinary meaning establishes that any provision of 'money' qualifies as 'material support.'"). As in *Hincapie-Zapata*, the court does not find the Government's unsupported assertion that a contrary construction should control compelling or persuasive.

Apart from the statutory language, the context in which it was written further indicates that Congress intended for the "including" clause to set a definitional floor for the term "medically frail" from which the agency lacked discretion to deviate. Every other exemption from the community engagement requirement created by Congress operates categorically, without reference to any requirement that the individual be unable to comply with the community engagement requirement. And the court finds it equally

---

[5] It is true that *Hincapie-Zapata* contemplates a set of circumstances under which the examples following "including" may not be fully incorporated into the preceding term, namely, when the listed examples "'are broader than the general category' and need to be 'limited in [the] light of that category.'" *Hincapie-Zapata*, 977 F.3d at 1202 (alteration in original) quoting *Massachusetts v. Env't Prot. Agency*, 549 U.S. 497, 556-557 (2007) (Scalia, J., dissenting). But the Eleventh Circuit categorizes it as an *exception* to the general rule, not the rule itself. And the exception so defined has no relevance here.

significant that Congress *did* impose a functionality-based limitation elsewhere: individuals "with a physical, intellectual or developmental disability" only qualify as "medically frail" if their condition "significantly impairs their ability to perform [one] or more activities of daily living." 42 U.S.C. § 1396a(xx)(9)(A)(ii)(V)(dd). Congress clearly knew how to qualify classifications and did so where it wished.

Legislative history, although sparse on this issue, resolves any lingering ambiguity. The House Committee Report states that the term "medically frail" "includes, but is not limited to, individuals who are blind or disabled, who have a chronic substance use disorder, who have a serious and complex medical condition, or who have a condition, as defined by the State and approved by the Secretary, as meeting the definition of medically frail." H.R. Rep. No. 119-106, pt. 1, at 620 (2025). Three different Senators and one Representative, moreover, made contemporaneous statements describing the five listed subcategories as qualifying as "medically frail" without further elaboration.[6]

[6] Representative Brett Guthrie was even more explicit, stating that an individual is "exempt if you're medically frail, which includes *anyone* who's blind, disabled, battling a chronic substance-use disorder or living with a serious and complex medical condition like cancer." Klunder Aff. [Dkt # 106], Ex. 62 at 6 (emphasis added).

In sum, the court agrees with the States that the agency lacked authority to exclude any subset of individuals in the five subcategories delineated as "medically frail" by Congress, as the IFR purports to do. The portion of the IFR imposing a limitation that the individual's "physical, mental, or other behavioral health condition significantly impairs the individual's ability to comply with the community engagement requirement" is beyond the powers of CMS (*ultra vires*) and thus contrary to law. *Ryan v. Immigr. & Customs Enf't*, 974 F.3d 9, 19 (1st Cir. 2020) ("When an agency acts in a manner not authorized by statute, its action is ultra vires and a violation of the APA.").

*b. Arbitrary and Capricious*[7]

"An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'" *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024), quoting *Fed. Commc'n Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "In reviewing an agency's action under that standard, a court may not 'substitute its judgment for that of the agency.'" *Ohio*, 603 U.S. at 292, quoting *Fed. Commc'n Comm'n v. Fox*

---

[7] Because the court finds the definition of "medically frail" to be contrary to law, it need not also determine whether it is arbitrary and capricious. The court accordingly only addresses the twelve-month lookback period and the self-attestation limit.

*Television Stations, Inc.*, 556 U.S. 502, 513 (2009). Its task is to assess whether "the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made,'" *Ohio*, 603 U.S. at 292 (alteration in original), quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), not "whether a regulatory decision is the best one possible or even whether it is better than the alternatives," *Fed. Energy Regul. Comm'n v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016).

The court finds the States' objections to the twelve-month lookback period and the limitation on the use of self-attestations unconvincing and falling well short of the arbitrary or capricious standard under the APA. The Government provided a non-frivolous rationale for adopting each provision and explained why it did not find the States' concerns of disenrollment compelling. *See, e.g.*, Medicaid Program; Community Engagement Requirement for Certain Individuals, 91 Fed. Reg. 33348, 33405 (June 3, 2026) ("States may not consider information older than 12 months when verifying medical frailty or other special medical needs, because older information may not reflect the individual's current condition."); *id.* at 33406 ("[I]n some cases, reliable claims information may not be available to the State for individuals who are medically frail or otherwise have other

special medical needs, particularly in cases where an individual recently obtained a diagnosis and medical services, but the claims data are lagging. For this reason, the absence of adjudicated claims or encounter data altogether, as well as the absence of particular claims or types of claims in available adjudicated claims data, may not be used to determine ineligibility for the exclusion based on medical frailty or other special medical needs."); *id.* ("We believe that requiring verification of medical frailty to confirm an individual's specified excluded status using data or other documentation after the State has verified that exclusion using a statement or other information provided under penalty of perjury (such as a screening tool) will motivate individuals to access care."). The APA does not require more. That the States (or even the court) may disagree with the wisdom of the agency's policies and conclusions, or may have made different choices, is irrelevant.

## II. Spending Clause Claim (Count III)

Count III asserts that the IFR violates the Spending Clause of the U.S. Constitution primarily because it does not provide clear notice of the States' obligations to satisfy the conditions to receive the restricted federal Medicaid funding. Given the court's conclusion that the definition of "medically frail" is contrary to law, it need not address this alternative ground for relief.

## III. Relief

Having determined that the portion of the IFR imposing a requirement that, to qualify as "medically frail," an individual must establish that their "physical, mental, or other behavioral health condition significantly impairs the individual's ability to comply with the community engagement requirement" in addition to falling within one of the five enumerated subcategories is contrary to law, the court must now determine the appropriate remedy.

The court agrees with the States that vacatur of the offending language is warranted here. The text can easily be excised from the IFR without otherwise impacting the validity of its provisions, and vacatur (as opposed to the Government's preferred remedy of remand) ensures that the issue is not left unresolved and that the parties have the clarity needed to comply with the January 1, 2027, implementation deadline imposed by Congress.[8]

In addition to vacatur, the States seek the entry of a permanent injunction enjoining enforcement or implementation of the relevant portion of the IFR. A plaintiff seeking a permanent injunction

---

[8] The States made clear at the October 22, 2026, hearing that they do not seek to extend the Congressionally mandated January 1, 2027, implementation date, a form of relief that the court in any event would be powerless to grant.

> must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest will not be disserved by a permanent injunction.

*Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008), quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).

The States have met their burden of showing irreparable harm for which monetary damages would provide inadequate compensation – they face the burden of costly and intensive alterations to their eligibility verification systems. *See Doe v. Trump*, 157 F.4th 36, 79 (1st Cir. 2025). They have also met their burden on the balance of hardship and public interest factors. It is well-recognized that there is an inherent public interest in ensuring that the government follows the law, and because enforcement of an unlawful definition of "medically frail" may lead to the disenrollment of otherwise eligible vulnerable individuals relying on Medicaid coverage for continuity of care, the States (and public) face potential for great hardship in the absence of an injunction. The court accordingly will issue the permanent injunction requested by the States.

Finally, to accommodate any errors or delays which may arise given the short timeline under which the States must now change their verification systems, the court agrees that the States should receive a 6-month stay of

enforcement[9] as to any determination that an individual does or does not qualify as "medically frail" within the scope of H.R. 1.

**ORDER**

For the foregoing reasons, the States' motion for summary judgment is ALLOWED IN PART and DENIED IN PART, and the Government's motion for summary judgment is ALLOWED IN PART and DENIED IN PART.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

[9] As previously noted, this stay of enforcement has no impact on the Congressionally mandated January 1, 2027, deadline for implementation.